UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUMMER WILSON, | ) |
| *Plaintiff*, | ) |
| vs. | ) No. 1:13-cv-01548-JMS-TAB |
| REPUBLIC AIRWAYS HOLDINGS, INC., | ) |
| *Defendant*. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGEMENT**

Plaintiff Summer Wilson sued Defendant Republic Airways Holdings, Inc. ("Republic") after she was terminated from her position as a Flight Attendant. Ms. Wilson asserts an interference claim against Republic under the Family and Medical Leave Act of 1993 ("FMLA"). Presently pending before the court is Republic's Motion for Summary Judgment on Ms. Wilson claim. [Filing No. 33.] For the reasons explained below, Republic's Motion for Summary Judgment is **GRANTED**.

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse

1

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller,* 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

### A. Employment Record

Ms. Wilson began employment with Republic on December 3, 2001, and held the position of Flight Attendant throughout her tenure. [Filing No. 35-2 at 64.] In 2009, Ms. Wilson began to suffer from foot pain that was originally diagnosed as recurrent edema, [Filing No. 35-3 at 14], but was later diagnosed as cellulitis which qualifies as a "serious health condition" under 29 C.F.R. § 825.113(a) and/or 29 C.F.R. § 825.115(c). Over the next few years, Ms. Wilson took FMLA-qualified leave from work due to her condition, [Filing No. 35-3 at 18], including on September 24 through September 27, 2011, [Filing No. 35-3 at 18]. Around this same time, Ms. Wilson began employment with Kentucky Fried Chicken ("KFC"). [Filing No. 37-3 at 2.] In a letter dated November 21, 2011, Republic terminated Ms. Wilson's employment (effective November 18, 2011) due to "abuse of travel privileges, abuse and/or misuse of FMLA, and calling in absent in connection with other employment." [Filing No. 36-1 at 2.] Ms. Wilson is a member of Union Local 135 which filed a grievance with Republic for her termination, which was denied after a final hearing on February 4, 2014. [Filing No. 36-1 at 2.] The instant case was filed by Ms. Wilson on September 25, 2013. [Filing No. 1 at 1.]

### B. Republic's Policies and Guidelines

Republic provides its employees with discounted airfares for them and for qualifying family members and companion use, sometimes referred to as "buddy passes" or "companion passes." [Filing No. 35-2 at 117.] Republic and its partner airlines have strict guidelines and prohibitions on the use of these passes, which are outlined in its employee manual. One such rule is that employees may not sell buddy passes for a profit, [Filing No. 35-2 at 117-118], and the selling of a pass for profit is a terminable offense, [Filing No. 35-2 at 119]. Another rule applicable to the travel privilege is that buddy passes may not be used for self-employment or other business purposes, which is terminable after the third offense. [Filing No. 35-2 at 119.] Further, although Republic's policy is to allow employees to work other jobs, absence from Republic employment in connection with other employment is a violation of its employment policy. [Filing No. 35-2 at 124.]

### C. Republic's Investigation of Ms. Wilson

Republic conducted two investigations into Ms. Wilson's conduct that were first initiated by separate divisions of the company. First, on October 10, 2011, Republic received an email concerning the possibility that of some of Ms. Wilson's companion' travel was for business purposes. [Filing No. 35-2 at 28.] This initiated an investigation that was at first led by Ms. Wilson's supervisor Nicole Simonson. [Filing No. 35-2 at 27-29.]

On November 8, 2011, while the first investigation was ongoing, Republic received a complaint from Allesande Mboup that Ms. Wilson had sold him "buddy passes" for which he had paid her, but was ultimately unable to use due to an invalid confirmation number. [Filing No. 35-2 at 13.] The complaint from Mr. Mboup initiated a second investigation into Ms. Wilson's alleged violation of Republic's travel policies—that is, profiting from the sale of a buddy pass. [Filing

4

No. 35-2 at 13.] Rachel Hernandez, Republic's manager of Employee Relations in the Human Resources Department, began communicating with Mr. Mboup about this second complaint.

Mr. Mboup provided documentation to Republic showing a Western Union wire transfer to Ms. Wilson for $800, [Filing No. 35-2 at 92; Filing No. 35-2 at 96], as well as a handwritten receipt indicating another payment of $400 to her, [Filing No. 35-2 at 93]. He also claimed that Ms. Wilson kept a significant amount of money that he had paid her, but she did not return his calls when he attempted to obtain a refund. [Filing No. 35-2 at 13.] Mr. Mboup stated further that he travelled to Kuwait on a buddy pass he had purchased from Ms. Wilson, but was unable to return on the return pass she had provided him because it was invalid. [Filing No. 35-2 at 13.] Finally, Mr. Mboup stated that he was asked by Ms. Wilson to send her additional funds for another confirmation number so that he could return to the United States, which he did. [Filing No. 35-2 at 22-24.] The company's investigation revealed that Ms. Wilson collected $800.00 from Mr. Mboup through a wire transfer for a ticket with a face value of $706.25, [Filing No. 35-2 at 26], and Ms. Wilson acknowledged that this was true, [Filing No. 35-2 at 69-70]. Ms. Wilson testified in her deposition that she sold Mr. Mboup a ticket for $800 that had a value of $706.25, but claimed Mr. Mboup refused a refund of the amount above the face value, claiming that it was a gift from him. [Filing No. 35-2 at 70.]

During Republic's investigation into Mr. Mboup's complaint, it came to Ms. Hernandez's attention that Ms. Wilson had also received money for companion passes from Mr. Mboup's brother, Boubacar Mbengue. [Filing No. 35-2 at 19.] Mr. Mbengue was not ultimately able to use the passes Ms. Wilson had booked for him, but he could not receive a refund of his money from Ms. Wilson. [Filing No. 35-2 at 19-20.] Mr. Mbengue also informed Republic that he had given Ms. Wilson a job at KFC with a start date of September 26, 2011. [Filing No. 35-2 at 24-25.] This

5

start date became relevant when Republic discovered Ms. Wilson was utilizing FMLA leave on that date. [Filing No. 35-2 at 36]. After the initial meeting with Mr. Mboup and Mr. Mbengue, Ms. Hernandez approached Brian Beidelman, Republic's Director of Human Resources, to seek his participation in the investigation. [Filing No. 35-2 at 25]. At this point Ms. Hernandez and Mr. Beidelman became aware of the concurrent investigation into Ms. Wilson's use of companion passes for business purposes by Ms. Williams. [Filing No. 35-2 at 28-29.] Republic therefore combined the two investigations. [Filing No. 35-2 at 29.]

Once Republic became aware that Ms. Wilson's official start date at KFC coincided with a period when she had claimed FMLA leave, it started further investigations to determine whether she had been absent from work due to her new job, [Filing No. 35-2 at 36], as this would also constitute a violation of company policy, [Filing No. 35-2 at 124]. During an interview with Ms. Wilson, she indicated that she may have worked on the date in question, but was unsure. [Filing No. 35-2 at 52.] Republic then requested that Ms. Wilson provide some form of documentation from KFC confirming or denying she worked on those days. [Filing No. 35-2 at 52.] Republic contacted a KFC human resources manager, Bill Grover, to confirm Ms. Wilson's official start date as September 26, 2011. [Filing No. 35-2 at 53.] During this conversation, Mr. Grover indicated that Ms. Wilson had attended training on this date and had been paid for working. [Filing No. 35-2 at 53.] Prior to her termination, Ms. Wilson did not provide Republic with documentation refuting its belief that she worked at KFC on September 26, 2011. [Filing No. 35-5 at 4-5; Filing No. 42 at 13.]

Republic's investigation into Ms. Wilson's abuse of the company companion travel rules [Filing No. 35-2 at 28-29], found that Patricia Williams had been a personal friend of Ms. Wilson since 2006, [Filing No. 35-2 at 6], and was registered to qualify for companion travel with Ms.

6

Wilson. As a registered travel companion, [Filing No. 35-2 at 66], Ms. Williams was subject to Republic's travel companion rules when traveling with Ms. Wilson on a companion pass. [Filing No. 35-2 at 104-105.] Republic's travel policy allows companion travel for leisure purposes only, and strictly prohibits travel for business purposes, [Filing No. 35-2 at 117], but according to Republic, Ms. Williams was using some of these passes for business purposes, [Filing No. 35-2 at 32-33]. Specifically, although Ms. Williams initially denied that her companion travel with Ms. Wilson was for business purposes, [Filing No. 35-2 at 6-7], she later admitted to performing a comedy show on the dates in question, [Filing No. 35-4 at 16-17]. This was further evidenced by information Republic retrieved from Ms. Williams' website, showing that she was performing on the dates in question. [Filing No. 35-2 at 33-35; Filing No. 35-4 at 19-24; Filing No. 35-5 at 1-5.] Republic's policy is that any travel for personal gain, whether paid or not, is considered for business purposes. [Filing No. 35-2 at 58.] The use of a buddy pass for business purposes alone is not a terminable offense, but in conjunction with the other investigations contributed to Republic's final decision to terminate Ms. Wilson's employment. [Filing No. 35-2 at 59.]

## III.
### DISCUSSION

### A. Admissibility of Evidence

Both parties argue that certain evidence submitted by the other party constitutes inadmissible hearsay and thus cannot be considered in deciding Republic's Motion for Summary Judgment. The Court will first set out the legal principles governing hearsay evidence, and then will address each parties' objections in turn.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered." *United States v. Linwood*, 142 F.3d 418, 424 (7th Cir.

7

1998). Permissible reasons for admission of out-of-court statements include the effect it has on the listener's state of mind, and to establish the sequence of events leading up to the matter at issue. *See, e.g.*, *Pugh v. City of Attica*, 259 F.3d 619, 627 n.7 (7th Cir. 2001) (holding that an out-of-court statement offered to prove employer's honest belief that plaintiff had misappropriated funds was not hearsay).

       *1. Admissibility of Republic's Evidence*

  Ms. Wilson objects to the admissibility of certain evidence Republic has offered to support its Motion for Summary Judgment on the grounds that it constitutes inadmissible hearsay. [Filing No. 37 at 2-6.] Republic responds that the evidence in question is not offered to prove the truth of the matter, but to establish the company's state of mind in conducting its investigation and its ultimate decision to terminate Ms. Wilson's employment. [Filing No. 42 at 3-8.] Specifically, Republic claims that it held an honest belief that some of its policies had been violated and constituted a terminable offense in line with company rules. [Filing No. 34 at 21.] Thus, Republic asserts that the evidence is offered to prove its state of mind in making this decision, not to prove that these offenses were actually committed, and as such are admissible as non-hearsay evidence.

  As set forth below, one way in which Republic can defeat Ms. Wilson's FMLA interference claim is by establishing that it held an honest belief that Ms. Wilson was abusing her FMLA leave by working another job while using FMLA leave with Republic. Because Republic offers the evidence in question to prove this belief and explain why it took the actions it did rather than to prove that Ms. Wilson actually committed these acts, [Filing No. 34 at 21], the Court agrees with Republic that the evidence to which she objects was offered only to prove Republic's state of mind, and are thus valid non-hearsay statements, *see Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th

Cir. 2004) (holding that certain statements were not hearsay because they were offered to show state of mind), for the following reasons:

- Ms. Wilson objects to the admissibility of statements made in Mr. Mboup's complaint to Republic as inadmissible hearsay, [Filing No. 37 at 2], but these statements demonstrate why Republic initiated its investigation, not whether she committed the acts in question.

- Ms. Wilson objects to statements made by Mr. Mboup that he paid Ms. Wilson for buddy passes, one of which he was unable to use during a trip to Kuwait, and was then forced to pay her more money for a valid pass, as inadmissible hearsay, [Filing No. 37 at 2], but these statements also show why Republic began its investigation into the sale of buddy passes for profit and why it believed Ms. Wilson had violated company policy, not whether these events actually occurred.

- Ms. Wilson objects to statements made by Ms. Hernandez that Mr. Mboup again later called Republic to inquire about his complaint and to request a refund as inadmissible hearsay, [Filing No. 37 at 3], but these statements again show Republic's reason for the investigation and its suspicion regarding Ms. Wilson's conduct, not whether the statements were true.

- Ms. Wilson objects to statements provided by Mr. Mboup demonstrating that funds were transferred to her as inadmissible hearsay, [Filing No. 37 at 3], but the statements show why Republic believed she had profited from the sale of the passes, not to prove she actually sold the passes.

- Ms. Wilson objects to statements made by Mr. Mbengue in his meeting with Ms. Hernandez regarding his purchase of passes from Ms. Wilson and his hiring of her at

- KFC as inadmissible hearsay, [Filing No. 37 at 5], but these statements show why Republic began its investigation into Ms. Wilson's FMLA leave and why it suspected she was abusing it, not whether she actually abused it.
- Ms. Wilson objects to statements made by Mr. Beidelman about an email he wrote regarding his conversation with Mr. Grover as inadmissible hearsay, [Filing No. 37 at 5], but the statements show why Republic believed at that time that Ms. Wilson had attended paid training on September 26, 2011 for KFC, not whether she actually did.

For these reasons, each of the above objections are **overruled**.

### 2. *Admissibility of Ms. Wilson's Evidence*

Republic objects to certain evidence presented by Ms. Wilson on the grounds that it constitutes inadmissible hearsay. [Filing No. 34 at 22-23.] Specifically, in November of 2011, Ms. Wilson recorded a telephone conversation she had with Mr. Grover, regarding his earlier telephone conversation with Mr. Beidelman, and she submits transcripts of the conversation as evidence. [Filing No. 37-1 at 1.] Republic objects to the transcript of the conversation between Ms. Wilson and Mr. Grover as inadmissible hearsay, arguing that the statements go to prove the truth of the matter asserted. [Filing No. 34 at 22-23.] Ms. Wilson responds that the statements do not go to prove the truth of the matter asserted, as the statements are offered only to prove that there is a genuine issue of fact as to whether Mr. Grover indicated to Republic that she worked for KFC on September 26, 2011. [Filing No. 37 at 6.]

Ms. Wilson quotes several statements from Mr. Grover during their telephone conversation where he represents what he did or did not tell Mr. Beidelman regarding whether Ms. Wilson worked on September 26, 2011. Ms. Wilson argues that this evidence is offered to cast doubt on Republic's honest belief that she worked on September 26, 2011. [Filing No. 37 at 6.] But these

10

statements could not cast doubt on Republic's honest suspicion that Ms. Wilson was abusing her FMLA leave unless the statements are used to prove the truth of the matter asserted—that Mr. Beidelman was told Ms. Wilson was not working on September 26, 2011. In other words, Mr. Grover's out-of-court statements to Ms. Wilson regarding what he told Mr. Beidelman are being offered for the sole purpose of proving the content of what Mr. Wilson told Mr. Beidelman, which is to say the truth of the matter asserted. Because Ms. Wilson asks the Court to rely on these statements for this purpose, these statements are inadmissible hearsay, and Republic's objection is therefore **sustained**. The Court will not consider this evidence in deciding Republic's Motion for Summary Judgment. *See MMG Fin. Corp. v. Midwest Amusements Parks, LLC, 630 F.3d 651, 656 (7th Cir. 2011)* ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

### B. FMLA Claim

The FMLA entitles eligible employees suffering from a qualifying illness to as much as twelve weeks of unpaid leave in a twelve month period. 29 U.S.C. § 2612(a)(1)(D). Employers are prohibited from interfering with, *id.* § 2615(a)(1), and retaliating against, *id.* § 2615(a)(2), employee use or attempted use of FMLA leave. Ms. Wilson pursues only an interference claim. [Filing No. 37 at 9.] The interference provision makes it unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

To prove an FMLA interference claim, the plaintiff must establish that: "(1) [s]he was eligible for the FMLA's protections, (2) h[er] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of his intent to take leave, and (5) h[er] employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW,*

11

*Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). The parties dispute only whether Ms. Wilson can prove the fifth element. [Filing No. 34 at 17; Filing No. 37 at 9.]

Ms. Wilson alleges that Republic interfered with her protected FMLA entitlement to return to her position after using FMLA leave by terminating her employment. [Filing No. 37 at 10-11.] In other words, Ms. Wilson claims that she had the right to return to her previous position as a flight attendant upon returning from her FMLA leave, and to not allow her return constitutes interference with her FMLA rights.

"An employee's right to return to work after taking leave is not unlimited; he is not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (quoting 29 U.S.C. § 2614(a)(3)(B)); *see also Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 768 (7th Cir. 2002) (stating "employers right to fire employees for poor performance if they would have fired them regardless of their having taken leave"). "The employer therefore may present evidence to show that the employee would not have been entitled to his position even if he had not taken leave; the employee then must overcome the employer's assertion." *Cracco*, 559 F.3d at 636.

Furthermore, the FMLA only provides protections for employees who use FMLA leave "for the intended purpose." 29 U.S.C. § 2614(a)(1). Therefore, "an employer can defeat an interference claim by showing, among other things, that the employee did not take leave for the intended purpose." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012). To do so, the employer "need only show that it refused to reinstate the employee based on an 'honest suspicion' that she was abusing her leave." *Id.* at 825-26 (citation and quotation marks omitted); *see Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997).

Republic argues that it is entitled to summary judgment on Ms. Wilson's FMLA interference claim for both of the following reasons: (1) it terminated Ms. Wilson's employment for selling buddy passes at a profit, which had nothing to do with her use of FMLA leave, and (2) it had an honest belief that Ms. Wilson was abusing her FMLA leave by working at KFC while she was utilizing her FMLA leave. [Filing No. 34 at 18-23.] The Court addresses each argument in turn.

First, Republic maintains that the undisputed evidence shows that it would have terminated Ms. Wilson even if it had not suspected her of abusing her FMLA leave because she sold at least one buddy pass to Mr. Mboup at a profit, which is a terminable offense pursuant to company policy. [Filing No. 34 at 18-19.] Ms. Wilson acknowledges that she sold Mr. Mboup a buddy pass, but contends that her receipt of more than the face value of the ticket price was not a profit, since Mr. Mboup offered it to her as a gift. [Filing No. 37 at 11.]

The undisputed admissible evidence demonstrates that Ms. Wilson was not entitled to the reinstatement of her position following her FMLA leave because Republic would have terminated Ms. Wilson's employment regardless of whether she used her FMLA leave. The evidence reveals that (1) Ms. Wilson sold Mr. Mboup a buddy pass for $800; (2) the face value of the ticket was $706.25; (3) although Ms. Wilson claims the difference was a gift, she kept the excess in the selling price over the cost of the ticket. [Filing No. 35-2 at 26; Filing No. 35-2 at 69-70; Filing No. 35-2 at 92; Filing No. 35-2 at 96.] Based on these facts, Republic asserts that it would have fired Ms. Wilson for violating its buddy pass policy, which prohibits the selling of buddy passes for a profit. [Filing No. 35-2 at 117-119.]

Once Republic has made this showing, the burden rests with Ms. Wilson to overcome Republic's assertion. *See Cracco*, 559 F.3d at 636. Ms. Wilson has failed to meet this burden.

13

Instead, she merely asserts that the alleged profit from the admitted sale of the buddy pass was merely a gift from Mr. Mboup. [Filing No. 37 at 11.] However, regardless of Ms. Wilson's characterization of the money she received above the face value of the ticket as a gift, Republic could reasonably construe this gift, which was provided as part of the same transaction as the selling of the buddy pass, as a violation of its buddy pass policy and terminate Ms. Wilson's employment on that basis. Ms. Wilson's position to the contrary is no more than semantics; at bottom, she engaged in the sale of a buddy pass and, as part of that transaction, received more money than the buddy pass was worth. Regardless of how she characterizes the transaction, she has not carried her burden to produce evidence to overcome Republic's showing that it would have terminated her employment for this conduct regardless of her use of FMLA leave. Accordingly, Republic is entitled to summary judgment on Ms. Wilson's FMLA interference claim on this basis alone. *See Cracco,* 559 F.3d at 636; *Ogborn*, 305 F.3d at 768.

Second, Republic maintains that Ms. Wilson's interference claim additionally fails because it had an honest suspicion that she had abused her FMLA leave by working a second job at KFC while using FMLA leave from her position with Republic. [Filing No. 34 at 21.] Ms. Wilson responds that, to the extent Republic has produced evidence that it had an honest suspicion Ms. Wilson was working at KFC on the day in question, this evidence is disputed by comments Mr. Grover made to Mr. Beidelman. [Filing No. 37 at 14-15.] Further, Ms. Wilson states that payroll records from KFC show that she was not working on the dates in question, September 24-27, 2011. [Filing No. 37 at 16 (citing Filing No. 37-3).]

Republic is correct that it has produced evidence that it held an honest suspicion that Ms. Wilson was abusing her FMLA leave by working at KFC while utilizing FMLA leave with Republic. Specifically, (1) Republic was informed by Mr. Mbengue that he had given Ms. Wilson

14

a job at KFC with a start date of September 26, 2011, [Filing No. 35-2 at 24-25]; (2) Mr. Boubacar later told Republic that he got Ms. Wilson a job working at KFC beginning on September 26, 2011, [Filing No. 35-2 at 36]; (3) during an investigative interview with Ms. Wilson, she indicated that she may have worked on September 26, 2011, but was unsure, and despite Republic's request to provide it with documentation from KFC confirming or denying whether she worked on that date, she failed to do so, [Filing No. 35-2 at 52]; and (4) Mr. Grover informed Mr. Beidelman that Ms. Wilson had attended paid training at KFC on September 26-27, 2011, [Filing No. 35-2 at 53]. This evidence is more than sufficient to give Republic an honest suspicion that Ms. Wilson was abusing her FMLA leave.

Ms. Wilson's arguments to the contrary are unpersuasive. First, for the reasons stated above, the evidence presented by Ms. Wilson regarding a phone conversation she had with Mr. Grover is inadmissible hearsay that cannot be used to defeat summary judgment. *See MMG Fin. Corp.*, 630 F.3d at 656. Moreover, even if the evidence were admissible, it only would cast doubt on the fourth category of evidence cited above. The first three categories of evidence, however, are alone more than sufficient for Republic to show that it had an honest suspicion that Ms. Wilson was abusing her FMLA leave.

Mr. Wilson's second argument—that her KFC employment records show that she was not working on the dates in question—also fails to advance her position. Ms. Wilson failed to provide these records to Republic until years after Republic made its decision to terminate her, thus they do nothing to undermine Republic's honest suspicion *at the time the decision was made*. [*See* Filing No. 35-2 at 52; *see also* Filing No. 37-3 at 2 (showing that the KFC employment records on which Ms. Wilson relies were not generated until July 2013).]

15

For these reasons, the undisputed evidence shows that Republic had an honest suspicion that Ms. Wilson was abusing her FMLA leave when Republic terminated her employment. Accordingly, Republic is entitled to summary judgment on this independent basis as well. *See Scruggs*, 688 F.3d at 825.

## IV.
## Conclusion

For the reasons explained above, Ms. Wilson's FMLA claims fail as a matter of law, and Republic's Motion for Summary Judgment is therefore **GRANTED**. [Filing No. 33.] Final Judgment will issue accordingly.

April 8, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**